WICKER, Judge.
Ronald Darce appeals his conviction of simple arson, a violation of La.R.S. 14:52. We reverse the conviction and vacate the sentence, finding the evidence to convict him was insufficient.
Mr. Darce was accused of burning 3116 43rd Street, a more-or-less vacant house in Metairie, on July 27, 1991. Mr. Darce was arrested for the crime three months later. He moved for a sanity hearing, and both psychiatrists found him competent to stand trial.
Following trial, the jury found Mr. Darce guilty of simple arson. He was then charged with being a multiple felony offender; and the state introduced a prior conviction: Mr. Darce pled guilty to burning his brother’s house in Slidell in 1988. As a result, the judge sentenced Mr. Darce to ten years’ imprisonment and specified that he was to receive psychiatric treatment.
Mr. Darce assigns two alleged errors: there was insufficient evidence to convict him and a statement he made at the time of his arrest should have been suppressed because the arrest was unlawful. Because we find the evidence insufficient to convict him, we will not consider the second assignment of error.
SUFFICIENCY OF EVIDENCE
The crime charged is “the intentional damaging by any explosive substance or the setting fire to any property of another, without the consent of the owner and except as provided in R.S. 14:51 [aggravated arson].” La.R.S. 14:52. The standard of review as to the sufficiency of proof to convict is whether, viewing the trial evidence in the light most favorable to the prosecution, any rational fact-finder could have concluded beyond a reasonable doubt that the elements of the crime had been proven. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984); State v. Michel, 581 So.2d 404 (La.App. 5th Cir.1991). When circumstantial evidence is involved, “it must exclude every reasonable hypothesis of innocence.” La.R.S. 15:438.
Robert Dubos testified that he owned the house at 3116 43rd Street which burned. He’d had the house for sale for about three years but took it off the market so his son could move in. His son was in the process of moving in when the fire took place. He gave no one permission to burn his house.
Gerard Hopkins lived at 3117, across the street from Mr. Dubos’ house and next door to Mr. Darce at 3121. He testified he was on his front porch smoking about 2:15 or 2:30 A.M. when he saw Mr. Darce “walk out his side yard, to the house directly across the street from his [3120].” Mr. *697 Darce “just went behind the house [3120].” As Mr. Darce was walking across the street to 3120, Mr. Hopkins saw him drop “something which appeared to be a cigarette lighter.” He admitted that he didn’t see a cigarette lighter but only thought it sounded like a cigarette lighter. He did see Mr. Darce holding a cigarette. Mr. Darce “was stumbling” while he was walking. Right after he saw Mr. Darce go behind 3120, he went inside his own house; and ten or twenty minutes later, 3116 was fully ablaze. He didn’t see Mr. Darce come back out from behind 3120, he didn’t see Mr. Darce go into 3116, and he didn’t see Mr. Darce after the fire.
Ted Anthony lived about a block and a half away from the burned house and testified that the fire truck woke him up. He went outside, and Mr. Darce ran or walked out of the darkness from the direction of 43rd Street and ran into him. Mr. Darce was out of breath and said he was out walking. About one and a half hours later he saw Mr. Darce at the intersection of 45th Street and Causeway Boulevard walking and looking “kind of lost.” Mr. Darce told him he was going home.
Dennis Guidry, an arson investigator, testified that the fire was deliberately set in two separate areas, the living room and a separate utility shed. There was no evidence of an accelerant such as gasoline; but the arsonist used available materials such as furnishings, papers, boxes, and the like. He believed it would take about ten minutes from the time the fire was set until flames would be coming out of the windows. He found the front door open but, because of the fire damage, couldn’t tell if it had been forced open.
Sgt. George J. Helmstetter, of the arson unit, testified that he questioned the witnesses and then discussed the case with his lieutenant. He took the information to a judge and further discussed it, ultimately getting a warrant for Mr. Darce’s arrest. He arrested Mr. Darce at his house and read him his rights. Mr. Darce signed a waiver of those rights. After being taken to the police station, Mr. Darce stated that he was on 43rd Street on the night of the fire about 4:30 A.M. and not before, having been at Cheers [a bar] in Fat City until 4:00 A.M. He didn’t see the fire. According to Sgt. Helmstetter, Mr. Darce signed the waiver voluntarily, without any promises, force, intimidation, or coercion of any kind.
Ralph Darce, Mr. Darce’s father, testified that his son went out with friends about 9:00 P.M. the night of the fire and he didn’t know where he was at the time of the fire. His son was a special education student who dropped out and failed grades, and he couldn’t read or write well. His son never held a steady job for more than four to six weeks. When his son drank, he was a different person and beyond his control. He had been in a psychiatric hospital, which would usually help for a while; but then he would stop taking his prescription. He had threatened him and his wife when he was drinking. Generally, his son would call the police on himself and they would come and get him. His son also had asthma and used an inhaler.
Ilece Gaudin saw Mr. Darce at Obermeyer’s about 9:00 P.M. the night of the fire, near Clearview Parkway and the I — 10 Service Road. She and others then went to Sharkey’s, then to Cheers in Fat City, and then to her mother-in-law’s house located on 45th Street a couple of blocks from the fire. They were at this house when the fire broke out. Mr. Darce came in about fifteen minutes before they heard the sirens. Ted Anthony was at her mother-in-law’s house also that morning after the fire broke out. At this point, Mr. Darce was outside the house. She last saw Mr. Darce that morning when she left her mother-in-law’s house, and he was breathing hard and sweaty.
There is no direct evidence of guilt: no one saw Mr. Darce enter or leave Mr. Du-bos’ house or set the fire. We do not believe the purely circumstantial evidence excludes every reasonable hypothesis of innocence. The evidence shows a man who went out with friends about 9:00 in the evening and ended up walking in his own neighborhood around the time of the fire. Certainly, this latter behavior is not conclusive of guilt, since Mr. Darce was seen by *698 two of his neighbors who were also out. Further, Mr. Darce’s inability to tell Sgt. Helmstetter exactly where he was at a particular time, on an evening three months earlier, is equally inconclusive. We do not believe therefore that a rational fact-finder could have found guilt beyond a reasonable doubt.
We reverse the conviction and vacate the sentence of Ronald Darce.
CONVICTION REVERSED; SENTENCE VACATED.