JjLANDRIEU, Judge.
The State of Louisiana filed a bill of information charging the defendant-appellant, Ronald Branch, with one count of violating La.Rev.Stat. 14:52 relative to simple arson of property valued at more than $500.00. He pled not guilty at his arraignment. The court appointed a lunacy commission, and a lunacy hearing was held on November 22,1994. After hearing testimony, the court found the defendant was incompetent and ordered him remanded to Feliciana Forensic Facility. Another lunacy hearing commenced on August 1, 1995, at which time the defense also filed a motion for a sanity commission to determine the defendant’s sanity at the time of the offense. Following additional testimony on September 19, 1995, the trial court found the defendant to be competent to stand trial. Another lunacy hearing on *201 December 19, 1995 resulted in another finding of competency. As a result, the trial court allowed the defendant to change his plea from not guilty to the dual plea of not guilty and not guilty by reason of insanity. Following a bench trial, the judge found the defendant not guilty by reason of insanity of the lesser verdict of simple arson of property valued under $500.00 and ordered the defendant transferred to Feliciana Forensic Facility. The defendant appeals his conviction.

STATEMENT OF THE FACTS

Three witnesses testified on the first day of trial. The first, Detective Haynes Ragas, testified that on September 2, 1994, he was assigned to the Detective Bureau and on call for arson investigations. At approximately 10:00 p.m., he was notified to go to 5419-21 Urquhart Street. When he arrived, he met with Captain Rappollo, a fire inspector. Captain Rappollo told Detective Ragas that he had | ^conducted a preliminary investigation, which showed the possibility of arson. Captain Rappollo had also interviewed witnesses and developed a possible suspect. Detective Ragas and Captain Rappollo toured the shotgun double residence. In 5421 Urquhart, they found a “pour pattern” in the kitchen in the rear of the residence. Detective Ragas took a sample of the wood from the area of the pour pattern; the sample subsequently tested positive for the presence of “weathered gasoline.” In the other half of the double, 5419 Urquhart, Detective Ragas found a sofa that had burned. The fires in the adjacent residences of the double were unconnected. Detective Ragas testified that he interviewed witnesses, identified a suspect, and obtained an arrest warrant for the defendant, but was not the officer who executed it.
The next witness for the State was Captain Vincent Rappollo, an expert in the field of determining the source and cause of fires. He testified that when he arrived on the scene, the fire was out. He spoke with the fire captain on the scene to determine what the fire looked like and what the firemen did. Captain Rappollo corroborated the testimony of Detective Ragas that the fire had two points of origin: one in the front left side and one in the rear kitchen area on the right. Captain Rap-pollo eliminated accidental causes because there was no electric or gas service, there was a pour pattern indicating that a flammable liquid had been poured onto the sofa, and there was also a strong odor of gasoline in the kitchen area. Captain Rap-pollo testified that, in his expert opinion, the fire was cause by “human intervention” which he described as the use of an “open flame heat source onto flammable combustible liquid.” Captain. Rappollo also testified that no gas container was found at the scene.
The third and final witness on January 30, 1996 was Rosemary Claiborne. |gShe testified that she lived at 5430 Urquhart, which is across the street and two houses down from 5419-21 Urquhart. At approximately 8:50 p.m., Ms. Claiborne was sitting on her front porch when she saw smoke coming out of the top front of the house at 5419-21 and then saw a blaze from the side window. Ms. Claiborne went inside and called the fire department. She then went back outside, and a few minutes later she saw the defendant coming out from the alley part of the house on the side where the defendant had lived, although she had not seen him recently. The defendant came out of the gate and walked away toward the Industrial Canal. At the time, Ms. Claiborne could see smoke and fire coming out of the house. Ms. Claiborne did not see anyone else with the defendant, nor had she seen anyone going in or out of the house before the fire broke out. Ms. Claiborne also testified, however, that she did .not see the defendant carrying anything.
After Ms. Claiborne testified, the defense stipulated that the boards taken from the house testified positive for the presence of weathered gasoline. The defense also stipulated that, if called to testify, Ms. Patricia Branch Roby would state *202 that she owned 5419 Urquhart and that she did not consent to the fire.
The defense called the only witness on the second day of trial. Dr. Richard Ri-choux testified that he had examined the defendant twice in connection with the lunacy proceedings. According to Dr. Ri-choux, on September 2, 1994, the defendant was legally insane and unable to distinguish right from wrong. He stated that the defendant was suffering from chronic paranoid schizophrenia and, based on his history, posed a danger to himself and others. Dr. Richoux based his opinion on the fact that, when he first examined the defendant two months after the crime, the defendant was in a grossly psychotic disorganized condition and “his own account of what took place, relative to the offense, was highly suggestive of |4his having been psychotic at the time that it happened.” Dr. Richoux could not recall whether the defendant told him he had fled the scene because the doctor did not have his notes from the first examination and the notes from the second did not mention it.
After Dr. Richoux testified, the defense offered a stipulation that Dr. Deland would testify in accordance with the testimony of Dr. Richoux. Dr. Deland, who was present during Dr. Richoux’s testimony, confirmed that her testimony would be the same, at which time the State accepted the stipulation.
After presenting the medical evidence, the defense rested it case. The trial court left the matter open to permit the State to call rebuttal witnesses, including on the issue of whether the defendant was seen fleeing the scene with a gas container. However, the State presented no witnesses. The State waived argument while the defense argued that the State had failed to prove that the damage to the house was greater than $500.00. The trial court then found the defendant not guilty by reason of insanity to the charge of arson in an amount less than $500.00. The court ordered the defendant to be transported to the forensic facility for a determination of whether he posed a danger to himself or others.

ASSIGNMENT OF ERROR NUMBER 1

In his first assignment of error, the defendant argues that the evidence was insufficient to show that he committed a crime. The defendant concedes that the State proved every element of simple arson, although not in a value over $500.00 as was correctly recognized by the trial court, but maintains that the State failed to prove that he was the arsonist.
| sIn evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir. 1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green, supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La. 1992).
In addition, when circumstantial evidence forms the basis of the conviction, *203 such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 872 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.Rev. Stat. 15:438. This is not a | fiseparate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Here, the defendant argues that his mere presence in the area is insufficient circumstantial evidence to support the verdict of not guilty by reason of insanity instead of not guilty. The defendant relies on State v. Darce, 613 So.2d 695 (La.App. 5th Cir.1993), writ denied 620 So.2d 873, in which the defendant was accused of burning a vacant house across the street from his own. On the night of the fire, a neighbor was standing on his porch at 3117 43rd Street when he saw the defendant walk out of the side yard of 3121 43 rd Street, the defendant’s own home, cross the street, and walk behind 3120 43rd Street, which was next door to 3116, the house which was later burned. The witness thought that the defendant dropped a cigarette lighter; the defendant was holding a cigarette and was stumbling. The witness then went into his own home, and when he came outside again ten or twenty minutes later, he saw that the house at 3116 43rd Street was on fire. The witness did not see the defendant come out from behind 3120, never saw him go into 3116, and did not see him after the fire. Another witness went outside when he heard the fire truck. The defendant was running or walking from the direction of 43ld Street and was out of breath. The same witness saw the defendant at a nearby intersection over an hour later; he described the defendant as looking lost. As in the instant case, the fire |7investigators determined that the fire at 3116 43 ld Street was deliberately set in two different areas; however, there was no evidence of an accelerant, but instead available materials such as boxes had been used to start the fire. The investigator stated that it would take approximately ten minutes after the fire was set for the flames to come out of the windows. After the defendant’s arrest some three months later, he made a statement denying that he had been on 43 rd Street until almost two hours after the fire. He also presented testimony that he had left his home much earlier in the evening. In reversing the defendant’s conviction, the appellate court noted that there was no direct evidence of guilt. No one saw the defendant enter or leave the house that was burned. At best, the evidence established that the defendant had been seen walking “in his own neighborhood around the time of the fire.” Darce, 613 So.2d at 697. The court found that “this latter behavior is not conclusive of guilt, since Mr. Darce was seen by two of his. neighbors who were also out.” Id. at 697-98. The court also found that the defendant’s inability to state, months after the incident, exactly where he was at the time of the fire was equally inconclusive. The court then found that a rational fact-finder could not have found the defendant guilty beyond a reasonable doubt.
Also, the evidence in the instant case is not as convincing as in State v. Theriot, 93-1959 (La.App. 1 Cir. 12/22/94), 648 So.2d 1042, writ denied 95-0205 (La.6/2/95), 654 So.2d 1103. In Theriot, the defendant threatened to burn down the trailer of a neighbor with whom he had been feuding. Two witnesses saw him running behind the trailer after it was set on fire. The defendant stared at one of the witnesses and threatened to burn her trailer also. Another witness, whom the 1 sdefendant contended at the trial had a motive to burn the trailer, testified that *204 the defendant admitted that he had set the fire.
The facts in this case are similar to those in Dane. The defendant was seen in the vicinity of the burning house but no one saw him coming from the house itself. There was no evidence that the defendant had threatened to burn the house, nor was there any evidence that he had purchased any accelerants. Notably, Ms. Claiborne never saw the defendant with any type of container for gasoline, and investigators found no such container on the scene. Because Ms. Claiborne stated that the defendant at one time lived at the house, like Dane, there may have been an innocent explanation for the defendant’s presence in the area. Even though Dr. Richoux made a reference to the defendant having admitted that he set the fire, his testimony failed to disclose any details of the defendant’s account of the incident. Without other evidence to support Dr. Richoux’s testimony, we cannot conclude, based on the evidence in the record, that a rational fact-finder could have found the defendant guilty of arson beyond a reasonable doubt.
Accordingly, we reverse the defendant’s conviction and vacate his sentence.
CONVICTION REVERSED; SENTENCE VACATED.