759 So.2d 31 (2000)
STATE of Louisiana
v.
Ronald BRANCH.
No. 99-K-1484.
Supreme Court of Louisiana.
March 17, 2000.
*32 Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Jane Louise Beebe, New Orleans, Counsel for Applicant.
Dwight Michael Doskey, New Orleans, Counsel for Respondent.
PER CURIAM.[*]
Louisiana, unlike some other states, does not expressly provide for a verdict in criminal cases of "guilty but mentally ill." Cf. Del.Code Ann., tit. 11, § 401(b) (1995); Ind.Code Ann. § 35-36-2-5 (Michie 1991). A Louisiana jury considering an accused's dual plea of not guilty and not guilty by reason of insanity must nevertheless first determine whether the state has proved the essential elements of the charged offense beyond a reasonable doubt before it may proceed to a determination of whether he was incapable of distinguishing between right and wrong at the time of the offense and therefore exempt from criminal responsibility for his acts. See State v. Marmillion, 339 So.2d 788, 796 (La.1976) ("Once the state has met its traditional burden of proof ... to establish beyond a reasonable doubt all necessary elements of the offence.... [and] shown that defendant has committed a crime, the defendant should bear the burden of establishing his defense of insanity in order to escape punishment."); 1 Louisiana Judges' Criminal Bench Book, p. 56 (Louisiana Judicial College 1993) (pattern jury instruction requires jurors to determine first "whether the defendant committed the offense charged [or an offense responsive thereto]."); see also Foucha v. Louisiana, 504 U.S. 71, 103-04, 112 S.Ct. 1780, 1797-98, 118 L.Ed.2d 437 (1992)(Thomas, J., dissenting) ("Insanity, in other words, is an affirmative defense [in Louisiana] that does not negate the State's proof, but merely `exempt[s the defendant] from criminal responsibility.'") (quoting Marmillion, 339 So.2d at 797).
As in any other criminal case, a defendant claiming that he was insane at the time of the offense remains entitled to a separate verdict of not guilty as well as to a verdict of not guilty by reason of insanity. La.C.Cr.P. art. 816 ("In addition to the responsive verdicts in Articles 814 and 815, a verdict of not guilty by reason of insanity is responsive if a defendant has specifically pleaded insanity in accordance with Article 552."). A defendant asserting that he or she was insane at the time of the offense may therefore urge at trial all other defenses available under the law. See La.C.Cr.P. art. 552 cmt. (The dual insanity plea eliminates the need for two juries but also means that "all defenses may be urged.... Evidence is admissible to show that the defendant did not commit the act, that he was justified by self-defense, that he was not responsible by reason of insanity, and other possible defense on the merits."). Because a verdict of not guilty by reason of insanity rests on a determination by the factfinder that the defendant committed the acts charged against him and that he is therefore not entitled to the responsive verdict of not guilty, an insanity acquittee may appeal the basis of his or her continued confinement in the custody of the state on any ground available to any other defendant in a criminal case, although he or she has not been "convicted" of a criminal offense. See La.C.Cr.P. art. 912(C)("The judgments or rulings from which the defendant may appeal include, but are not limited to ... [a] judgment which imposes sentence ... [and][a] ruling upon a motion by the state declaring the present insanity of the defendant....") (emphasis added).
In the present case, respondent was charged with simple arson with damage amounting to $500.00 or more in violation of La.R.S. 14:52. After a bench trial, he was found not guilty by reason of insanity on the lesser verdict of simple arson with damage amounting to $500.00 or less. The trial court ordered respondent transferred to the Feliciana Forensic Facility at Jackson, *33 Louisiana, for evaluation of whether he posed a danger to himself or to others. See La.C.Cr.P. art. 654. Respondent appealed and challenged his confinement on grounds that the state's evidence at trial did not exclude every reasonable hypothesis of innocence that he did not set the fire which damaged the house where he had at one time lived. The court of appeal agreed and set aside the trial court's verdict. State v. Branch, 96-1239 (La.App. 4th Cir. 5/5/99), 737 So.2d 199. The state immediately sought review in this Court. It appears from the docket master in this case that with the state's writ pending in this Court, the trial judge conducted a hearing on August 17, 1999, and ordered respondent released from the forensic facility, where he had remained confined throughout his appeal. It is not clear from the present record whether the court took that action because it found that respondent no longer posed a danger to himself or others or because the Fourth Circuit had overturned its verdict and the state had not sought a stay of that action in this Court. Cf. La.C.Cr.P. art. 922(D); State v. Bennett, 610 So.2d 120, 125-26 (La.1992) (judgment of court of appeal does not become final until this Court has taken final action on a timely filed writ to review that action). We granted the state's application on November 19, 1999, and now reverse the decision of the Fourth Circuit, reinstate the trial court's verdict, and remand this case to the district court to clarify respondent's present status.
On the night of September 2, 1994, separate fires damaged a sofa in the front left side, and the kitchen at the back of the right side, of a vacant double house on Urquhart Street in New Orleans. Pour patterns burned into the sofa and wooden floor of the kitchen, and a heavy odor of gasoline in the kitchen area, convinced investigators on the scene that the fire was the result of arson. Although the investigators found no discarded containers of gasoline inside the vacant home or in the alleyway outside, chemical tests of wood samples taken from the kitchen floor confirmed the presence of gasoline. The initial report of the fire came from Rosemary Claiborne, who was sitting on the porch of her home across the street on the evening of September 2, 1994, when she saw smoke billowing out of the top of the double house and then observed a blaze at a side window. She went inside to call the fire department. Claiborne then went back outside and a few minutes later spotted respondent, whom she knew from the neighborhood, emerge from the alleyway on the side of the home where he had once lived. Claiborne had not seen him in the neighborhood recently and watched as he came out of the gate and walked away. Respondent was alone and appeared to have nothing in his hands. Claiborne had no direct knowledge of whether anyone had been living in the apparently vacant house, boarded across the front to keep out intruders, but she had not seen anyone else around the residence earlier that evening.
In support of his insanity plea, respondent called Dr. Richard Richoux, a member of the sanity commission appointed by the court to determine respondent's competency to stand trial. Dr. Richoux and Dr. Sara Deland had examined respondent both before and after his commitment to the forensic facility in 1994 to regain his capacity to stand trial. The psychiatrists agreed that respondent is a chronic paranoid schizophrenic and that on September 2, 1994, "very likely or much more likely than not ... Mr. Branch was legally insane at the time of the offense." On cross-examination, Richoux testified that he had formed this opinion when he examined respondent some two months after the offense and found him grossly psychotic, a determination which led to respondent's initial transfer to the forensic facility at Jackson. According to Dr. Richoux, during that examination respondent "made statements which were very indicative of paranoid delusions that he was suffering from at the time that lead directly to his action of setting the building on *34 fire." When respondent returned from his stay at the forensic facility nearly a year later, Dr. Richoux found him in "significantly better condition," yet "his version of what took place relative to the offense had not changed significantly." The psychiatrist therefore remained of the "firm opinion that Mr. Branch was grossly psychotic and set the fire in the first place for delusional reasons."
In State v. Breaux, 337 So.2d 182, 186 (La.1976), this Court relied on federal authority to hold that a defendant's inculpatory statements made to a psychiatrist in the course of a sanity commission are not admissible as substantive evidence on the question of the defendant's guilt or innocence. See also 1 Wayne R. LaFave @ Austin W. Scott, Jr., Substantive Criminal Law, § 4.5, pp. 491-92 (1996). The trial transcript shows, however, that defense counsel fully acquiesced in Dr. Richoux's testimony on cross-examination. In fact, it was defense counsel who, all but conceding the question of guilt or innocence and anticipating the consequences of a possible insanity acquittal, elicited Dr. Richoux's opinion that "[b]ased on a history of dangerous behavior, undertaken on at least some occasions, while in a psychotic condition, it would be our opinion that Mr. Branch is certainly more dangerous than the average individual." In the absence of a timely objection, respondent's statements to the psychiatrist became substantive evidence for the factfinder to consider in reaching a verdict. State v. Allien, 366 So.2d 1308, 1311 (La.1978). Hearsay statements may not alone support a verdict, Allien, 366 So.2d at 1310-11, but the verdict in this case also rested on circumstantial evidence provided by Rosemary Claiborne, who placed respondent alone on the scene, emerging from the alley way on the side of the house at the time the fires started. Although Dr. Richoux did not give the details of respondent's statements, he considered them a reliable basis for diagnostic purposes because "the circumstances, as we appreciated them, were consistent with what he told us." See State v. Martin, 93-0285, p. 7 (La.10/17/94), 645 So.2d 190, 195 ("The touchstone [of a statement's admissibility] is trustworthinessan untrustworthy confession should not alone support a conviction, and corroboration is an effective test of the trustworthiness of a person's inculpatory statements."). The state case was therefore sufficient to negate any reasonable probability of misidentification. State v. Long, 408 So.2d 1221, 1227 (La.1982).
Accordingly, the judgment of the court of appeal is reversed. The verdict rendered by the trial court is reinstated, and this case is remanded to the district court for purposes of clarifying the respondent's present status and for all further proceedings not inconsistent with the views expressed herein.
JUDGMENT OF THE COURT OF APPEAL REVERSED; VERDICT REINSTATED; CASE REMANDED.
NOTES
[*] Traylor, J., not on panel. See La. S.Ct. Rule IV, Part II, § 3.