802 So.2d 1281 (2001)
STATE of Louisiana
v.
Bernell ROMAN.
No. 2000-K-1705.
Supreme Court of Louisiana.
December 7, 2001.
Rehearing Denied February 1, 2002.
*1282 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Nicole B. Barron, Counsel for Applicant.
Ike Spears, New Orleans, Counsel for Respondent.
PER CURIAM.[*]
Although it readily acknowledged that claims of ineffective assistance of counsel generally belong in post-conviction proceedings unless the record on appeal allows a definitive resolution of the question, State v. Ratcliff, 416 So.2d 528, 530 (La. 1982), and though it recognized that "if an alleged error falls within the ambit of trial strategy it does not establish ineffective assistance of counsel," and, further, that "hindsight is not the proper perspective for judging the competence of counsel's trial decisions," State v. Roman, 99-1699, pp. 2-3 (La.App. 4th Cir.5/10/00), 761 So.2d 829 (unpub'd), the court of appeal nevertheless reversed respondent's conviction and sentence for possession of a firearm by a previously convicted felon in violation of La.R.S. 14:95.1, on grounds that trial counsel's failure to assert a defense of insanity, "albeit unknowing and unintentional, clearly prejudiced the defendant and deprived him of a fair trial." Roman, 99-1699 at 8. After reviewing the record, including the testimony of two psychiatrists who examined respondent in connection with a motion for a new trial which raised questions about his competency at the time of trial and sanity at the time of the offense, the court of appeal found that "more likely than not, defendant trial counsel was not aware of his client's psychiatric history prior to trial." Roman, 99-1699 at 8. "Even if the defendant was competent at the time of trial," the court of appeal observed, "we are convinced that had trial counsel known of the *1283 defendant's psychiatric history and raised an insanity defense, there is a reasonable probability the jury's verdict would have been different, particularly where [the state's witnesses] testified at trial that the defendant was acting `crazy' when he brandished the gun." Id. We granted the state's application to reverse the decision below because the present record does not support the underlying premises of the court of appeal's opinion and does not allow a reviewing court to resolve completely the question of whether trial counsel rendered reasonably effective assistance.
Respondent's trial attorney filed the motion for a new trial and in the motion he did not accuse himself of ineffective assistance. Instead, the motion alleged that counsel had discovered since the verdict that respondent had an extensive history of mental health treatment for a mental condition which "may have impaired both his ability to form the requisite intent to commit a crime and his competency to stand trial." The motion asked for the grant of a new trial "in the interests of justice." La.C.Cr.P. art. 851(5).
The trial court did not conduct a hearing on the motion until a full year after it was filed and after respondent had secured new counsel to represent him. In light of the allegations made in the motion, the court had appointed a sanity commission composed of Drs. Rafael Salcedo and Richard Richoux, to examine respondent with regard to his mental status. The psychiatrists interviewed respondent on the morning of the hearing. Although both psychiatrists were aware of respondent's prior treatment for chronic paranoid schizophrenia at the Feliciana Forensic Facility in 1989 on a pre-trial commitment in connection with an unrelated charge, and that he continued to receive out-patient treatment, including anti-psychotic medication, through a local mental health center, they found no basis in their examination of respondent for doubting his competency at that time or at trial a year earlier. On the other hand, the psychiatrists refrained from expressing a firm opinion with regard to whether respondent had been actively psychotic at the time of the charged offense. Respondent had given them a coherent account of the circumstances leading to his arrest which appeared entirely consistent with the defense offered at trial that he had merely brandished a toy gun at his neighbors and had therefore not committed any firearms offense. Nevertheless, the psychiatrists acknowledged that if respondent had in fact brandished a real gun but believed it a toy then he may have been actively suffering from a mental impairment at the time of the offense which could have clouded his perceptions. However, Dr. Salcedo indicated that he would need to review the defendant's complete psychiatric records to address whether respondent had been insane at the time of the offense, i.e., incapable of distinguishing between right and wrong. La.R.S. 14:14. In response to a question from the court, Dr. Richoux explained that "[t]here are points in time at which a person with paranoid schizophrenia might very well be able to distinguish right from wrong. There may also be points in time at which that same person with paranoid schizophrenia cannot distinguish right from wrong, so really what one has to do is try to zero in on the point in time at question." Dr. Richoux also observed that despite the allegations made in the new trial motion, respondent informed both psychiatrists that "he had told his attorney about having a history of mental illness well before standing trial ... there's a difference of recollection or a difference of opinion *1284 between Mr. Roman and his attorney in that regard."
At the close of the hearing on the new trial motion, respondent's counsel urged the court to set aside the verdict as a miscarriage of justice because the jury had been deprived of critical information regarding respondent's mental health treatment in determining whether he subjectively believed that the gun he had brandished to his neighbors was simply a toy. Addressing the implications of that argument, that respondent's trial attorney had rendered ineffective assistance by failing to place the information before jurors, the trial court mused that "if we're going to believe Dr. Richoux, that the defendant believed that he had a toy gun, then maybe we should believe Dr. Richoux when he says the defendant told him that he had discussions with his prior counsel about the fact of his previous mental history prior to trial." The court therefore held open the possibility that respondent's trial attorney had made a tactical decision not to present alternative defenses asserting that "it was a toy gun so therefore he's not guilty of this crime, but if you don't believe it was a toy gun then he was crazy enough that he believed it was so therefore you should find him not guilty by reason of insanity." The court found that simply as a matter of trial tactics, it could "easily understand the defense attorney not wanting to employ that type of alternative defense." The court in any event denied the motion on grounds that "the defendant was afforded a fair trial [in which] the factual issue was fairly and fully presented to the jury...."
Given the particular allegations of the original motion for a new trial, the trial court's ruling did not expressly address the question of whether counsel rendered ineffective assistance by failing to raise an insanity defense. Nevertheless, even construing the motion in that manner, we agree with the trial court that any reasonably competent attorney, considering a defense of insanity solely on the basis of the testimony offered by Drs. Salcedo and Richoux at the new trial hearing, might well have refrained from presenting alternative defenses to respondent's jury. While "[a] defendant asserting that he or she was insane at the time of the offense may ... urge at trial all other defense available under the law," State v. Branch, 99-1484, p. 2 (La.3/17/00), 759 So.2d 31, 32, counsel must also consider that "[t]he making of inconsistent defenses is likely to confuse the jury and to bring public opprobrium on the criminal justice system for tolerating such monkeyshines." Eaglin v. Welborn, 57 F.3d 496, 501 (7th Cir.1995). Although respondent's neighbors testified at trial that he had brandished a real gun after engaging in a wholly inappropriate discussion about drugs with a neighbor's five-year-old stepdaughter, and then losing his self-control when the girl's father confronted him, the police did not find a gun in respondent's possession when they arrived on the scene to arrest him. The police also did not search respondent's home. The state's case thus turned entirely on the uncorroborated testimony of its witnesses that in their opinion respondent had produced a real gun, and the defense actually presented at trial, that respondent had in fact flourished a toy gun which counsel then produced in court for the jurors' inspection, was a viable one. If found credible by jurors, the defense would have resulted in a complete acquittal.
On the other hand, an insanity defense risks an acquittal which may commit a defendant indefinitely to a state forensic facility for as long as the state provides *1285 clear and convincing evidence that he or she has a mental illness and poses a danger to himself or to others. Foucha v. Louisiana, 504 U.S. 71, 88, 112 S.Ct. 1780, 1789, 118 L.Ed.2d 437 (1992); State v. Perez, 94-0130, pp. 1-2 (La.1/27/95), 648 So.2d 1319, 1320. The commitment may in fact exceed the maximum sentence provided for the charged crime. See Grant H. Morris, Place in Purgatory; Conditional Release of Insanity Acquittees, 39 Ariz. L.R. 1061, 1063 (1997)("Typically, insanity acquittees are confined for lengthy periods of time, often spending more time confined than persons found guilty of the same crimes.") (footnotes omitted); La.C.Cr.P. art. 654 (trial court may order an insanity acquittee released from commitment to a mental institution on probation "for a fixed or an indeterminate term"); see also 18 U.S.C. § 4243(e)(2)(authorizing confinement until an insanity acquittee "would not create a risk" of harm). By contrast, pretrial commitment upon a finding that the defendant lacks the capacity to proceed may last no longer than the maximum penalty for the charged offense. La. C.Cr.P. art. 648(B)(1)("In no instance shall such custody, care, and treatment exceed the time of the maximum sentence the defendant could receive if convicted of the crime with which he is charged."). In any case in which the charged offense carries a penalty significantly less than life imprisonment at hard labor and in which a viable factual defense on the merits exists, reasonably competent counsel must weigh carefully the risks against the benefits to his client of advancing an insanity defense, even in a case in which the defendant's documented treatment in a mental institute also provides a factual basis for a dual plea of not guilty and not guilty by reason of insanity.
We therefore find no basis in the record developed at the hearing on the motion for a new trial for concluding definitively that respondent's trial attorney remained unaware of his mental health history, that any reasonably competent attorney would have informed himself of that history and presented an insanity defense at trial, and that counsel's failure to have advanced that defense undermines confidence in the reliability of the jury's verdict. Strickland v.. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We also find no basis for disturbing the court's ruling that the interest of justice did not require a new trial as a matter of La.C.Cr.P. art. 851(5). See State v. Toomer, 395 So.2d 1320, 1328 (La.1981)(the grant or denial of a new trial under art. 851(5) "presents nothing for this Court's appellate review".).
The decision of the court of appeal is therefore reversed, respondent's conviction and sentence are reinstated, and respondent is referred to post-conviction proceedings on any claim of ineffective assistance of counsel. This case is remanded to the court of appeal for consideration of his remaining assignment of error pretermitted on original appeal.
DECISION OF THE COURT OF APPEAL REVERSED; CONVICTION AND SENTENCE REINSTATED.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as justice pro tempore, participating in the decision.