MARC E. JOHNSON, Judge.
| ^Defendant, Perry Abbott, appeals his conviction and sentence for second degree battery. For the reasons that follow, we conditionally affirm his conviction and sentence and remand the matter for an evi-dentiary hearing to determine if defendant validly waived his right to a jury trial.
Defendant was charged in a bill of information on August 11, 2010 with second degree battery in violation of La. R.S. 14:34.1. He initially pled not guilty, but later changed his plea to not guilty by reason of insanity. After being found competent to stand trial, defendant proceeded to a bench trial on September 7, 2011, where the trial court found him guilty as charged. The trial court sentenced defendant to five years imprisonment at hard labor. Defendant timely appealed.

FACTS

On June 6, 2010, defendant was admitted to River Oaks Hospital pursuant to a doctor’s order where he was diagnosed with “bipolar disorder with psychiatric features.” While there, defendant began taking medication; specifically, he was prescribed Haldol for his psychotic symptoms and Lithium for his mood disturbance.
Is At 6:30 a.m. on June 10, 2010, Deanna Johnson arrived at River Oaks where she worked as a nurse manager. When she arrived, defendant was singing loudly and causing chaos on the unit. At approximately 7:15 a.m., Ms. Johnson and the staff went to defendant to give him an injection to calm him down. Gilbert Worthy, who is a psychiatric counselor, and a male nurse were present to hold defendant down, if necessary. As Ms. Johnson gave defendant the injection, defendant was cursing and threatening to kill her. Ms. Johnson subsequently went about her day, and defendant got better.
*1068 Later, defendant started acting up again and fighting with the other patients, which necessitated another injection at approximately 11:30 a.m. Ms. Johnson did not want to give defendant the second injection because she was afraid of him due to his earlier threat. As such, other staff members attempted to administer the injection, but defendant screamed and refused to cooperate. Defendant then saw Ms. Johnson and told her to give him the injection. Although Ms. Johnson was scared, she gave defendant the injection and walked away.
At approximately 1:00 p.m., Ms. Johnson and two co-workers were in the nurse’s station talking while the patients were in therapy. A few minutes later, the two coworkers walked out, followed by Ms. Johnson. At that point, defendant punched Ms. Johnson in the face in the nose area three or four times, and she began bleeding profusely. Mr. Worthy pulled defendant away from Ms. Johnson, but defendant continued to fight and swing his arms. It took a male nurse, who was approximately 6'3" and weighed 250 pounds; Mr. Worthy, who was also a large man; and another male to restrain defendant. The incident was captured on videotape, and the videotape was shown to the judge during trial.
Ms. Johnson was taken to East Jefferson General Hospital where she received sutures on her nose and pain medication. She was referred to a plastic |4surgeon, who operated on her within a week of the attack. She underwent a second operation approximately two months later.
Ms. Johnson explained that the doctor had to cut her head from the crown down to the ear, and he had to cut the backside of her ear from top to bottom and the inside of her ear from top to bottom in order to get material to remake her nose. She stated that right after the attack her nose was flat because the bones were shattered. Ms. Johnson testified that she still suffers ill effects from the attack. She asserted that she could not breathe very well through her nose or smell, and that her face hurt, especially when it rained, because both of her cheek bones and her eye orbit had been broken. Ms. Johnson also stated that she had to take anti-depressants and sleep aids as a result of the attack.
LAW & ANALYSIS
In defendant’s sole assignment of error, he contends the evidence was insufficient to support his second degree battery conviction because he did not possess the required criminal intent at the time of the offense since he suffered from a mental disease or defect which prevented him from distinguishing between right and wrong.
The law presumes a defendant is sane. La. R.S. 15:432; State v. Silman, 95-154 (La.11/27/95), 663 So.2d 27, 32. To rebut the presumption of sanity and avoid criminal responsibility, the defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. La.C.Cr.P. art. 652. Criminal responsibility is not negated by the mere existence of a mental disease or defect. To be exempted from criminal responsibility, the defendant must show he suffered a mental disease or defect which prevented him from distinguishing between right and wrong at the time he committed the conduct in question. La. R.S. 14:14; Silman, 663 So.2d at 32.
| ¿¡The determination of sanity is a factual matter. Silman, supra. In considering an accused’s plea of not guilty and not guilty by reason of insanity, the trier of fact must first determine whether the State has proven the essential elements of the charged offense beyond a reasonable *1069 doubt. The trier of fact may then proceed to the determination of whether the defendant was incapable of distinguishing between right and wrong at the time of the offense, and is thus exempt from criminal responsibility for his actions. State v. Branch, 99-1484 (La.3/17/00), 759 So.2d 31, 32 (per curiam).
All evidence, including both expert and lay testimony, along with defendant’s conduct and actions before and after the crime, may be considered in determining whether the defendant has met his burden of proof. State v. Williams, 10-1010 (La.App. 5 Cir. 9/27/11), 76 So.3d 90, 96. On review of a claim for sufficiency of evidence in an action where an insanity defense has been raised, the appellate court, applying the standard outlined in Jackson v. Virginia,[1] must determine whether under the facts and circumstances of the case, any rational fact finder, viewing the evidence in a light most favorable to the prosecution, could conclude, beyond a reasonable doubt, that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense. Silman, supra.
In the present case, defendant was convicted of second degree battery, which is defined as “a battery when the offender intentionally inflicts serious bodily injury.” La. R.S. 14:34.1(A). “Serious bodily injury” is defined as “... bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily |fimember, organ, or mental faculty, or a substantial risk of death.” La. R.S. 14:34.1(B).
Defendant argues he did not have the required specific intent to inflict harm on Ms. Johnson because he suffered from a mental disease or defect which prevented him from distinguishing between right and wrong. Defendant relies on a February 9, 2011 report from Dr. Rafael Salcedo, a forensic psychologist, and Dr. Richard Ri-choux, a forensic psychiatrist, which he introduced into evidence to support his position.
In that report, Drs. Salcedo and Richoux stated that it was more likely than not that at the time of the commission of the alleged offense, defendant was suffering from a major psychiatric illness, namely Schizoaffective Disorder. They further stated that as a result of defendant’s paranoia and grandiosity associated "with that disorder, they believed that it was more likely than not that at the time of the commission of the alleged offense, defendant’s psychiatric disorder impaired his ability to distinguish right from wrong. Their report indicated that they had reviewed the arresting officer’s report and Jefferson Parish Correctional Center medical records, which contained some medical records from River Oaks.
Conversely, the State presented the testimony of Dr. William Lo, a psychiatrist who had been working at River Oaks since 2003 and who was defendant’s attending physician while defendant was a patient at River Oaks from June 6 to 11, 2010. Dr. Lo testified that he prepared a discharge summary when defendant left River Oaks on June 11, 2010. In that discharge summary, Dr. Lo stated that at the time of the incident, defendant was in control of his faculties and made a calculated decision to hit a female staff member, and that defendant was not responding to internal stimuli or having any hallucinations when he did so. Based on defendant’s behavior on the unit, Dr. Lo stated he believed that at the 17time of the offense, defendant could ascertain right from wrong. In preparing *1070 his report, Dr. Lo talked to three staff members regarding the attack and interviewed defendant right after the incident.
The record shows the trial judge was faced with conflicting psychiatric evidence regarding defendant’s state of mind at the time of the incident. The evidence shows that defendant threatened to kill Ms. Johnson when she gave him the first injection. Later that day, defendant carried through with his earlier threat by striking Ms. Johnson in her face, causing serious injuries. Dr. Lo, defendant’s attending psychiatrist at River Oaks, testified he believed that at the time of the offense, defendant was acting with his full faculties, was in control of himself, and could ascertain right from wrong. On the other hand, Drs. Salcedo and Richoux, who did not examine defendant until several months after the incident, believed that it was more likely than not that at the time of the commission of the offense, defendant’s psychiatric disorder impaired his ability to distinguish right from wrong.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. Jurisprudence holds that the diagnosis and opinions of a treating physician is entitled to more weight than that of the diagnosis and opinions of an evaluating physician. See Powell v. Chabanais Concrete Pumping, Inc., 11-408 (La.App. 5 Cir. 12/28/11), 82 So.3d 548, 559 (citations omitted). In this case, the trial court rejected the opinions of the evaluating physicians, Drs. Salcedo and Richoux, and gave deference to Dr. Lo, the treating physician, who opined that defendant could distinguish between right and wrong at the time the offense was committed.
|RWe do not find the trial court erred in accepting the testimony of Dr. Lo over the opinions of Drs. Salcedo and Richoux. Dr. Lo was defendant’s treating physician, and he rendered his opinion after interviewing three staff members and defendant shortly after the incident. Conversely, Drs. Salce-do and Richoux, who were not defendant’s treating physicians, rendered their opinions after interviewing defendant many months after the incident, and after viewing the police report and medical records from the Jefferson Parish Correctional Center and River Oaks.
Considering the totality of the evidence, we find the trial judge could have reasonably concluded that defendant failed to prove by a preponderance of the evidence that he was insane or incapable of distinguishing between right and wrong at the time of the offense. Accordingly, we find the evidence sufficiently supports defendant’s conviction for second degree battery.

ERRORS PATENT

Pursuant to La.C.Cr.P. art. 920, we reviewed the record for errors patent and find the record does not reflect defendant knowingly and willingly waived his right to a jury trial before proceeding to a bench trial.
The record shows that defendant filed a “Motion to Reserve Right to Waive Trial by Jury” on February 22, 2011, almost seven months before trial. In that motion, defendant moved the court to permit him to exercise his right to trial by judge and to waive his right to a jury trial should he elect to do so at the time of trial. The judge granted the order to show cause attached to the motion. However, the record does not reflect that defendant was properly advised of his right to a jury trial in accordance with La.C.Cr.P. art. 780, or *1071 that he knowingly and willingly waived that right before proceeding to a bench trial. Although neither defendant nor the State raise this issue, this Court has recognized said issue as an error patent. State v. Lokey, 02-1087 (La.App. 5 Cir. 2/25/03), 840 So.2d 653, 655-56, writ denied, 03-1212 (La.11/7/03), 857 So.2d 518.
Defendant was convicted of second degree battery, which at the time of the offense was punishable by not more than five years imprisonment with or without hard labor. La. R.S. 14:34.1(C). Louisiana Constitution Article I, § 17 and La. C.Cr.P. art. 782 provide that a case which may be punishable by hard labor shall be tried by a jury composed of six jurors. Louisiana Code of Criminal Procedure article 780 requires that a defendant be advised of his right to a jury trial. Although the right to a jury trial may be waived in non-capital cases, it must be “knowingly and intelligently” waived. La.C.Cr.P. art. 780(A). Waiver of this right is never presumed. Lokey, 840 So.2d at 656.
Because the record in this case does not reflect a valid jury waiver, we remand the matter to the trial court for an evidentiary hearing on the question of whether the defendant validly waived the right to a jury trial. If the evidence shows that defendant did not make a valid waiver, the trial court must set aside the conviction and sentence and grant defendant a new trial. Defendant’s right to appeal any adverse ruling on the waiver issue is reserved. See State v. Nanlal, 97-786 (La.9/26/97), 701 So.2d 963; Lokey, supra.

DECREE

Defendant’s conviction and sentence for second degree battery are conditionally affirmed. The matter is remanded to the trial court for an evidentiary hearing to determine if defendant validly waived his right to a jury trial in accordance with the above instructions and for further proceedings, if necessary, pursuant to Nanlal.

CONDITIONALLY AFFIRMED; REMANDED FOR EVIDENTIARY HEARING

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).