STATE OF LOUISIANA

VERSUS

JAMAAL EDWARDS

NO. 22-K-41

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Susan S. Buchholz
First Deputy, Clerk of Court

May 25, 2022

Susan Buchholz
First Deputy Clerk

**IN RE** STATE OF LOUISIANA

---

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE SCOTT U. SCHLEGEL, DIVISION "D", NUMBER 13-4134

---

Panel composed of Judges Fredericka Homberg Wicker,
Hans J. Liljeberg, and John J. Molaison, Jr.

### WRIT GRANTED IN PART, DENIED IN PART; REMANDED

In this writ application, the State seeks review of the trial court's January 5, 2022 ruling, granting defendant's unconditional release from Eastern Louisiana Mental Health System ("state mental hospital"). For the following reasons, we deny this writ application in part and grant it in part for the limited purpose of re-opening the contradictory hearing for the trial court to determine what, if any, restrictions should be placed upon defendant's release from the state mental hospital.

***Facts and Procedural History***

On December 5, 2013, defendant was charged by indictment with the second degree murder of Tracy Nguyen, in violation of La. R.S. 14:30.1. On July 20, 2016, the trial court found defendant not guilty by reason of insanity and committed him to the state mental hospital. On December 16, 2021, the trial court held a hearing, pursuant to La. C.Cr.P. art. 657, to consider the recommendation of

the Louisiana Office of Behavioral Health's forensic review panel that defendant be discharged from the state mental hospital because he does not have a mental illness.

At the hearing, Dr. Deonna Dodd testified that she is currently defendant's treating psychiatrist and that he has shown no evidence of a continued psychiatric illness during his hospitalization. Dr. Dodd stated that she diagnosed defendant with antisocial personality disorder, for which there is no treatment. She testified that during defendant's time at the hospital, he has had difficulty following the rules and has consistently demonstrated violent behavior with both patients and staff on many occasions. She noted that some staff members were significantly injured by defendant, including one person who suffered a broken jaw and hearing loss. Dr. Dodd described defendant as being inappropriate with and fixated on females. She said defendant "appears to be in control of his anger and aggressiveness and uses it at will in a calculated manner." Dr. Dodd testified that defendant "will use manipulation, criminal behavior, violence, to obtain whatever his goal is at that time."

Dr. Dodd further stated, "Our recommendations to the Court is [sic] that we would ask that the Court take into account is that, though we do believe [defendant] to be dangerous, he has proven himself to be a dangerous individual, we do not believe that he suffers from mental illness." Dr. Dodd recommended that defendant no longer be confined at the state mental hospital, because he does not have a significant, organic psychiatric illness. She stated that defendant's personality disorder is not recognized as a serious mental illness in the psychiatric community.

Dr. Shannon Sanders testified that she is a psychologist and was assigned to complete defendant's risk assessment as part of the forensic review panel. Dr. Sanders provided that defendant has multiple risk factors that increase his

likelihood of engaging in violent behavior. She agreed with Dr. Dodd that the risk factors were concerning, but stated that they had a "confliction" because defendant did not have a diagnosable mental illness that is treatable. Dr. Sanders testified that defendant's substance use is also a significant risk factor, noting that defendant acknowledged he was "under the influence" when he shot his fiancée, Tracy Nguyen. She stated that it was a "big concern" that defendant did not feel like he was addicted to any drug and that he did not see any real issue if he were to use drugs again. Dr. Sanders stated that defendant was "found to be at a moderate risk and that it could elevate to a higher risk if he were to be released directly into the community without any additional safeguards in place." Dr. Sanders suggested the following regarding safeguards:

> Could be him, you know, having drug tests, routine drug screens, and the ones that could test for synthetic marijuana use, contact with like a probation parole-type officer or meeting with a mental health professional to ensure that he is handling the stress of just day-to-day life and reintegrating back into the community, if he has any relationship stress, things like that, employment, money, that he has some additional person kind of checking in on him to make sure he is not faltering at all.

At the conclusion of the hearing, the trial court requested briefs from the parties and set another hearing for January 5, 2022.

On December 29, 2021, the State filed its memorandum in opposition to defendant's discharge, in which it argued that defendant should continue to be confined, but acknowledged contrary law and jurisprudence, citing to *Foucha v. Louisiana*, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). The State asserted that if the court found that it was required to discharge defendant, then it should order him released with strict conditions "to ensure the public safety from this highly dangerous defendant."

On January 2, 2022, defendant filed his memorandum in support of his discharge from the state mental hospital. Defendant submitted that because he is

3

no longer mentally ill, *Foucha* and Louisiana law require that he be fully discharged, without any conditions. He alleged that La. C.Cr.P. art. 657 dictates that having a mental illness is a required condition for further detention and for placing any conditions or restrictions on his release.

At the hearing on January 5, 2022, the trial court ordered that defendant be discharged from the state mental hospital. The trial court then addressed whether it should place defendant on supervision, and stated:

> Unfortunately, the Court does not find anything within the State statutes that has been drawn to address this situation. All of the State laws under 654 et seq. and, specifically, 657 go on to contemplate that the defendant is not dangerous to self or others and that he—whoever "he" may be—has a mental health issues that can continue to be treated while under supervision. The State's laws do not contemplate when somebody has reached—has no mental illness but is still considered dangerous to others. This Court is left with no choice to unconditionally discharge him and hope that the State legislators address this issue in this coming session.

On that same date, the trial court signed a written judgment ordering defendant to be unconditionally discharged.[1]

### *Law and Discussion*

In this writ application, the State challenges the trial court's release of defendant from the state mental hospital, while also acknowledging that the United States Supreme Court's holding in *Foucha*, *supra*, is contrary to its position. Alternatively, the State argues that the trial court should have released defendant with strict conditions. The State asserts that the trial court erroneously interpreted the pertinent codal provisions as not allowing it to impose conditional release. It requests that this Court remand the matter for the trial court to make a determination of whether conditional release is warranted under a correct interpretation of the law.

---

[1] Also, on January 5, 2022, the State filed an emergency motion to stay with this Court, which was granted. This Court ordered that defendant's unconditional release from the state mental hospital be stayed pending resolution of the State's writ application.

Defendant responds that the trial judge correctly applied the *Foucha* precedent and did not err in ordering his unconditional release. He argues that *Foucha*, *supra*, prohibits his further confinement based on a finding of dangerousness alone and no mental illness. He argues that La. C.Cr.P. art. 657.1 permits a court to place conditions upon an insanity acquittee's release only if the court finds that the acquittee has a treatable mental illness. He contends that La. C.Cr.P. art. 657.2 further reinforces the premise that having a mental illness is a threshold requirement before a court imposes conditions upon an acquitted person's release.

In 1992, the United States Supreme Court, in a plurality decision, held in *Foucha* that the State of Louisiana could not indefinitely institutionalize an insanity acquittee until he could show he is not dangerous to himself and others, where he did not suffer from a mental illness. *See Foucha,* 504 U.S. 71, 112 S.Ct. at 1781. In that case, the United States Supreme Court found that the Louisiana statute allowing continued confinement of an insanity acquittee on the basis of his antisocial personality disorder, after a hospital review committee had reported no evidence of mental illness and recommended conditional discharge, violated due process. *Id.* In *Foucha*, like the present case, the defendant had been involved in several altercations at the hospital and the doctor stated that he could not certify that the defendant would not be a danger to himself or others. *Foucha*, 504 U.S. at 74-75, 112 S.Ct. at 1782-83.

In the present case, similar to *Foucha*, Dr. Dodd testified that although defendant has antisocial personality disorder and a continued potential for violence, he has no evidence of mental illness. As a result, she recommended that he be released from the hospital. Dr. Sanders agreed with this recommendation and suggested that defendant be released with safeguards in place.

5

Based on the United States Supreme Court's decision in *Foucha*, we find that the trial court did not err in finding that defendant may no longer be confined to the state mental hospital. Although there was testimony that defendant has been violent at the hospital and could be violent again in the future, both doctors testified that defendant does not currently have a mental illness. We acknowledge that *Foucha* controls and requires that defendant be released from custody. Accordingly, we deny the writ application in part, as to the State's argument that defendant should not be discharged from the state mental hospital.

Next, the State argues that if this Court finds that defendant must be discharged from the state mental hospital, there should be restrictions and conditions placed upon his release. It contends that the trial court erroneously interpreted the pertinent codal provisions as not allowing the trial court to impose conditional release, noting the trial court stated it was "left with no choice to unconditionally discharge him and hope that the State legislators address this issue in this coming session."

The purpose of statutory interpretation is ascertainment of the legislative intent and the reasons which prompted the legislature to enact the law. *State v. Brooks*, 09-2323 (La. 10/19/10), 48 So.3d 219, 222. The Louisiana Supreme Court has held that the legislative intent of the law is "determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law[.]" *Caldwell v. Janssen Pharmaceutical, Inc.*, 12-2447 (La. 1/28/14), 144 So.3d 898, 907.

La. C.Cr.P. art. 657 provides in pertinent part that the court can "hold a contradictory hearing to determine whether the committed person no longer has a mental illness as defined by R.S. 28:2 and can be discharged, or can be released on probation, without danger to others or to himself as defined by R.S. 28:2." Article

6

657 further provides that after a contradictory hearing, and upon filing written findings of facts and conclusions of law, "the court may order the committed person discharged, released on probation subject to specified conditions for a fixed or an indeterminate period, or recommitted to the state mental institution."

Defendant seeks to have this Court interpret the articles pertaining to discharge or release on probation as authorizing conditional release of a committed person *only if* he or she continues to have a treatable mental illness. However, the codal articles pertaining to the discharge or release of insanity acquittees do not expressly prohibit the conditional release of a committed person who no longer has a mental illness. La. C.Cr.P. art. 657 provides that a committed person who no longer has a mental illness can be discharged, but it does not state that an individual may not be released on probation. Further, La. R.S. 28:2(11) defines "discharge" as "the full **or conditional release** from a treatment facility of any person admitted or otherwise detained under this Chapter." (Emphasis added.)

The statutory language of La. C.Cr.P. arts. 657.1 and 657.2 also does not indicate that an insanity acquittee may only be placed on conditional release if he has a treatable mental illness. La. C.Cr.P. art. 657.1 provides, in pertinent part:

> A. At any time the court considers a recommendation from the hospital-based review panel that the person may be discharged or released on probation, it may place the insanity acquittee on conditional release if it finds the following:

> (1) Based on the factors which the court shall consider pursuant to Article 657, he does not need inpatient hospitalization but needs outpatient treatment, supervision, and monitoring to prevent his condition from deteriorating to a degree that he would likely become dangerous to self and others.

****

The language of La. C.Cr.P. art. 657.1(A)(1) uses the term "condition" instead of mental illness and also focuses on "supervision" and "monitoring" to ensure the individual's condition does not deteriorate to such a degree that he

7

would become dangerous to self or others. Article 657.1(B) further states the court "shall subject a conditionally released insanity acquittee to such orders and conditions it deems will best meet the acquittee's need for treatment, supervision, and monitoring and will best serve the interests of justice and society."[2]

We further note that *Foucha* did not address whether or not a defendant, who no longer has a mental illness, can be released on probation or with restrictions. In *Foucha*, the United States Supreme Court found that the continued confinement of an insanity acquittee who no longer had a mental illness violated due process. *See Foucha*, 504 U.S. at 77, 112 S.Ct. at 1784. However, the United States Supreme Court did not specifically define the circumstances under which a Louisiana insanity acquittee, who was no longer mentally ill, could be released.

In the present case, the trial court interpreted the relevant articles as requiring a committed person to have a mental illness in order to be placed on conditional release, stating, "All of the State laws under 654 et seq. and, specifically, 657 go on to contemplate that the defendant is not dangerous to self or others and that he…has a mental health issue that can continue to be treated while under supervision." The trial court noted that Louisiana's laws do not contemplate when a person has no mental illness but is still considered dangerous.

While we agree that some language in the applicable codal articles pertains to situations where the defendant still has a mental illness but can be conditionally released or released on probation, neither the codal articles nor *Foucha* prohibits the conditional release of a defendant who is no longer mentally ill.[3]

---

[2] *See also State v. Watson,* 00-2185 (La. App. 4 Cir. 1/17/01), 779 So.2d 46, where the Fourth Circuit found that the defendant, who was no longer mentally ill, could be conditionally released from the State residential facility to either a forensic aftercare program in a group home or to family. The defendant's only diagnoses in that case were hypertension and problems with incarceration and involuntary hospitalization. The Fourth Circuit noted that there was not even a diagnosis of antisocial personality disorder as was the case in *Foucha*.

[3] Of note, comment (a) of the official revision comments to La. C.Cr.P. art. 657, states the following:

> This article provides flexibility in release procedures, to cope with circumstances of individual cases, by allowing the court to act on the basis of the application and reports filed, or to order a full hearing to determine the propriety of the requested release. Further flexibility in release procedures, and additional protection to the public, is afforded by the provision authorizing the

We find the trial court was not prohibited from conditionally releasing defendant with "such orders and conditions it deems will best meet the acquittee's need for treatment, supervision, and monitoring and will best serve the interests of justice and society." *See* La. C.Cr.P. art. 657.1(B).  Based on our finding that the trial court had the authority to order the conditional release of defendant, we remand this matter for the limited purpose of re-opening the contradictory hearing for the trial court to determine what, if any, restrictions should be placed on defendant's release.

## *Conclusion*

For the foregoing reasons, we deny the writ application in part as to the State's argument that defendant should continue to be confined at the state mental hospital.  However, finding that neither *Foucha* nor the applicable Louisiana statutes prohibit placing conditions or restrictions on defendant's release, we grant the writ in part and remand for the limited purpose of re-opening the contradictory hearing in order for the trial court to determine what, if any, restrictions should be placed upon defendant's discharge from the state mental hospital.

Gretna, Louisiana, this 25th day of May, 2022.

**HJL**

---

court to release on probation, on such conditions as it determines to be necessary.  Probationary release, subject to continued supervision and double-checking of the defendant's condition and habits, is most significant in this type of release; for there will be cases in which release is justified only if the defendant is to be carefully supervised upon his return to community life.  The A.L.I. Comments state that seven states have such a statutory provision.

STATE OF LOUISIANA                          NO. 22-K-41

VERSUS                                      FIFTH CIRCUIT

JAMAAL EDWARDS                              COURT OF APPEAL

                                           STATE OF LOUISIANA

**WICKER, J., CONCURS WITH REASONS**

I agree with the majority's thorough analysis and conclusion in this case and with the necessity for remand for imposition of permitted conditions of release pursuant to La. C.Cr.P. art. 657. Jamaal Edwards (defendant) is no longer mentally ill and therefore must be released. Despite the defendant's substantial history of violent behavior while committed at Eastern Louisiana Mental Health System, this Court is constrained by the limitations established by *Foucha v. Louisiana*, 504 U.S. 71, 86 S. Ct. 1780, 118 L.Ed. 2d 437 (1992), and the statutory language of La. C.Cr.P. art. 657. Resultantly, in Louisiana an insanity acquittee cannot be required to prove they are both no longer mentally ill and no longer dangerous in order to obtain release. *Foucha*, 504 U.S. at 86. La. C.Cr.P. art. 657 provides release guidance for defendants who continue to suffer from a mental disease or defect but no longer pose a risk of substantial harm to themselves or others. However, the Louisiana code does not account for a situation like defendant's, in which he has been declared free of mental disease or defect but remains a serious threat to the community at large.

I write separately only to discuss a possible path to resolve this undesired outcome in the future. The rare circumstances of this case present a constitutional dilemma that is resolvable only by the legislature, not the courts. This issue requires a delicate balance to ensure the protection of Due Process rights, according to *Foucha*, while authorizing the government to safeguard the community from violent actors. Accordingly, the Supreme Court requires states

22-K-41

to narrowly tailor statutory language to specific circumstances in which continued detainment is necessary to serve a clear governmental interest. *Foucha*, 504 U.S. at 86.

In *Foucha*, the Supreme Court clearly prohibited statutes that require insanity acquittees to prove they both no longer suffer from a mental disease or defect and also are no longer a danger to themselves or others. 504 U.S. at 86. Generally, once the mental illness is controlled or no longer present, the acquittees must be released. *Id.* at 82. Furthermore, the Court held in *Foucha* that the State of Louisiana had shown no evidence to support the conclusion that Terry Foucha was indeed dangerous. *Id.* On this basis, the Court held indefinite confinement was unconstitutional. *Id.* at 82-83. However, this decision does not prohibit statutes that require the State to meet a burden of proof of clear and convincing evidence that the defendant poses a substantial risk of bodily harm to themselves or the community at large, even if the defendant is free of mental disease or defect. *Foucha v. Louisiana,* 504 U.S. 71, 82 (1992); *citing United States v. Salerno,* 481 U.S. 739, 747-749, 95 L. Ed. 2d 697, 107 S. Ct. 2095 (1987) (holding to protect the community from danger a state may specify narrow circumstances for confinement). Additionally, the State must specify the temporal and holding conditions of confinement for dangerous individuals. *Foucha v. Louisiana,* 504 U.S. 71, 82 (1992) (prohibiting indefinite confinement and requiring a defined term for continued commitment); *United States v. Salerno,* 481 U.S. 739, 749, (1987).[1]

---

[1] In *Salerno*, the Court held, "in certain narrow circumstances persons who pose a danger to others or to the community may be subject to limited confinement." *Foucha v. Louisiana*, 504 U.S. 71, 82 (1992); *citing United States v. Salerno*, 481 U.S. 739, 749, (1987). Such requirements include, "first demonstrating probable cause… [providing] a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community." *Salerno*, 481 U.S. at 751. Justice O'Connor in her concurrence stated, "it might therefore be permissible for Louisiana to confine an insanity acquittee who has regained sanity if… the nature and duration of detention were tailored to reflect pressing public safety concerns related to the acquittee's continuing dangerousness." *Foucha*, 504 U.S. at 88.

In addition to the requirement of narrowly tailored circumstances and conditions of confinement, as to the requirement of proof of continued dangerousness, the *Foucha* opinion indicates that states cannot use the crime the defendant was acquitted of as the basis for a finding of continued dangerousness after the acquittee is proven free of mental disease or defect.[2] A verdict of not guilty by reason of insanity establishes that the person committed a criminal act and that he or she committed the act because of mental illness. *Jones v. United States*, 463 U. S. 354, 364, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983). Thus, the acquitted criminal act cannot be considered in the release danger analysis if the defendant's mental illness, as the cause of the acquitted violent act, is no longer present.[3] However, violent or criminal acts committed after the illness subsides can be evaluated, and perhaps can also be pursued by the State through standard criminal procedures.[4]

An additional limitation provides that character traits, such as antisocial personality disorder cannot be the sole justification for continued confinement. *Foucha*, 504 U.S. at 80.[5] Antisocial personality disorder is not a mental illness, but it is untreatable and often considered a dangerous trait or a predisposition to harming others. *Foucha*, 504 U.S. at 80; *See* State's Exhibit K, pp. 97-99.

---

[2] Many states, including Louisiana, do have statutes authorizing continued confinement or restricted release of Sexually Violent Predators. In these cases, the defendant's violent acts of their acquitted crime can be used as evidence to prove dangerousness because of the governmental interests in protecting the community from sexual predators. *See* La. R.S. § 15:541; *State v. Cook*, 16-1518 (La. 5/3/17), 226 So. 3d 387 (finding defendant's insanity acquittal fell within the plain meaning of the statute and thus required him to register as a sex-offender despite being acquitted); *See also*, Mo. Rev. Stat. § 632.495; NY CLS Men Hyg § 10.06; Ariz. Rev. Stat. Ann. §§ 36-3701-3716; Minn. Stat. § 253B.02(18c); Fla. Stat. § 394.918; K.S.A. Ch. 59, Art. 29a.

[3] Under *Foucha*, the defendant's charge of second-degree murder of his fiancée, Tracy Nguyen, cannot be used as evidence of his violent behavior because he was acquitted by reason of insanity. 504 U.S. at 82. However, his extreme violent behavior during his confinement and the expert testimony during his trial, affirming his continued potential for violence, are both factors that can be evaluated for conditional release. *See* State's Exhibit K, pp. 97-99.

[4] The Court in *Foucha* noted that, "if Foucha committed criminal acts while [civilly committed], such as assault, the State does not explain why its interest would not be vindicated by the ordinary criminal processes involving charge and conviction," barring any sort of prescription or statute of limitations issues. *Foucha*, 504 U.S. at 82.

[5] Edwards, like Foucha, was diagnosed with antisocial personality disorder. Dr. Deonna Dodd testified to this disorder leading to violent outbursts, particularly directed at females. Dr. Dodd stated no treatment options exist for the defendant's disorder. See State's Exhibit K, pp. 97-99.

However, the Court held that absent evidence of other violent acts, the disorder itself cannot lead to continued confinement because of the indefinite nature of the condition. *Foucha*, 504 U.S. at 84.

For these reasons, the Court held any statutory language regarding continued confinement must place the burden of proof of clear and convincing evidence on the State to prove the defendant is dangerous through the defendant's actions, in addition to any dangerous character or personality traits. *Id.* at 87.

### Approaches of Other States

The purpose of civil commitment is twofold. The first is to help the individual suffering from mental illness, and the second is to ensure no harm befalls them or those they interact with.[6] With the first purpose eliminated in this case, the State must narrowly tailor and clearly set the limitations to serve the second. The Supreme Court in *Foucha* reiterated that the state's interest in community safety is paramount, but not broadly infinite. 504 U.S. at 81. Resultingly, the State must clearly define dangerousness in terms of the defendant's actions, as well as a term limit for confinement. *Id.*

Several states seemed to have addressed this issue through the lens of the Supreme Court's narrowly tailored purpose and term limit requirements. *Id.* In Wisconsin the relevant statute reads that a court must order a defendant's release, "unless it finds by clear and convincing evidence that further supervision is necessary to prevent a significant risk of bodily harm to the person or to others or of serious property damage." Wis. Stat. § 971.17 (5). The statute continues to provide that a court may consider, "the nature and circumstances of the crime, the person's mental history, and current mental condition." Wis. Stat. § 971.17 (5); *see*

---

[6] The Supreme Court holds, "a verdict of not guilty by reason of insanity establishes two facts: (i) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness." *Jones v. United States*, 463 U. S. 354, 364, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983). Additionally, Congress approves such findings justify "hospitalizing the acquittee as a dangerous and mentally ill person" *See* H. R. Rep. No. 91-907; *Jones v. U.S.*, 463 U.S. 354, 364 (1983).

*State v. Randall,* 192 Wis. 2d 800, 808-09, 532 N.W.2d 94 (1995) (holding a defendant who was proven dangerous could not be confined in excess of the maximum term for the offense charged).

Similarly, Hawaii's statutory code requires the acquittee to prove beyond the preponderance of the evidence, "that the person is no longer affected by a physical or mental disease… or may safely be either released on the conditions applied for or discharged." HRS § 704-415 (2). The Hawaii Supreme Court found that placing the burden of proof on the defendant did not violate their Due Process Rights and requiring them to show, beyond the preponderance of the evidence, that they were not mentally ill or dangerous was constitutional. *State v. Miller*, 84 Hawai'i 269, 933 P.2d 606 (1997).

The State of Washington requires acquittees who are convicted of a felony to prove they are fit for release to a community setting, "without substantial danger to other persons, or substantial likelihood of committing criminal acts jeopardizing public safety or security." Rev. Code Wash. (ARCW) § 10.77.150 (c); *see also State v. Platt*, 143 Wn.2d 242, 249, 19 P.3d 412 (2001) (held, regardless of sanity, a defendant must show they do not pose a substantial risk to themselves or the community at large). The standard of proof in Washington, according to *Platt*, is beyond the preponderance of the evidence. RCW 10.77.200(2); *State v. Platt*, 143 Wn.2d 242, 252 (2001).

Additionally, Washington DC requires defendants to recover from insanity and no longer be a danger to the community. D.C. Code § 24-501(e). If an individual has recovered from their mental illness but will, "in the reasonable future be dangerous to himself or others," continued confinement is appropriate. D.C. Code § 24-501(e); *see also United States v. Hinckley*, 2021 U.S. Dist. LEXIS 257289 (evaluating only the risk the defendant poses to others after their mental condition is subsided or controlled via medication).

5

In a broader sense, Arkansas' statutory code states a defendant must, "recover to the point" they are no longer a danger to themselves or others. A.C.A. § 5-2-315; *see Ark. Dep't of Corr. v. Bailey*, 368 Ark. 518, 247 S.W.3d 851 (2009) (interpreting *U.S. v. Jones* to allow for indefinite commitment for "treatment and protection of society"); *Jones v. U.S.*, 463 U.S. 354, 366 (1983). If the defendant does not prove recovery to "the point" necessary, they will continue to be committed by the Arkansas Department of Human Services. A.C.A. § 5-2-315.

While some of these states' statutory constructs place the burden upon the defendant to prove they are not a danger, and some permit consideration of the nature of the original crime for which the defendant was found not guilty by reason of insanity in analyzing the defendant's ongoing dangerousness, none of these statutes have to date withstood Supreme Court scrutiny. The safer course of action is legislation which places the burden upon the state to prove by clear and convincing evidence the defendant's ongoing dangerousness based upon acts committed after the defendant became free of ongoing mental disease or defect. Further, any contemplated legislation should require term limits for continued confinement, specific conditions of confinement tailored to addressing the defendant's particular dangerousness and for period review of the defendant's ongoing danger to himself or others.

*Conclusion*

In the current case, the constraints of *Foucha* and La. C.Cr.P. art. 657 bind this Court to release Jamaal Edwards, albeit not unconditionally, as the majority clearly outlines. However, this issue may be redressed by the appropriate branch of state government, the Louisiana Legislature, to address the prospect of other

dangerous individuals being released into the community upon a finding that they no longer suffer from mental disease or defect.

**FHW**

STATE OF LOUISIANA                                    NO. 22-K-41

VERSUS                                                FIFTH CIRCUIT

JAMAAL EDWARDS                                        COURT OF APPEAL

                                                     STATE OF LOUISIANA


**MOLAISON, J., CONCURS WITH REASONS**

I agree with the majority we are constrained by *Foucha v. Louisiana*, 504

U.S. 71, 112 S. Ct. 1780, 118 L.Ed. 2d 437 (1992), and La. C.Cr.P. art. 657 to

reach the result of confirming the defendant's release from the Eastern Louisiana

Mental Health System on the basis that he no longer has a continuing psychiatric

illness, as determined by his treatment providers. I also agree that a remand is

appropriate to allow the trial court to consider what conditions should be

imposed on the defendant's release. As Judge Wicker suggests, the remedy for

avoiding these types of issues in the future may, in fact, lie with the legislature. I

write separately, however, to express my concern over the result that the

application of the relevant *current* law to the facts of this particular case

produces.

Here, the record before us leaves little doubt as to the defendant's

propensity for extreme violence both before and during his confinement at a

mental health facility. He did commit the second-degree murder of his girlfriend,

Tracy Nguyen.[1] Then, while undergoing treatment for what providers opined

---

[1] As noted by the court in *State v. Cook*, 16-1518 (La. 5/3/17), 226 So.3d 387, 390-91:

> A finding of not guilty by reason of insanity is a determination that defendant undoubtedly committed the charged criminal act but he cannot be punished for it because he was legally insane at the time of his actions. *See State v. Branch*, 99-1484, p. 1 (La. 3/17/00), 759 So.2d 31, 32 (per curiam) ("A Louisiana jury considering an accused's dual plea of not guilty and not guilty by reason of insanity must nevertheless first determine whether the state has proved the essential elements of the charged offense beyond a reasonable doubt before it may proceed to a determination of whether he was incapable of distinguishing between right and wrong at the time of the offense and therefore exempt from criminal responsibility for his acts."); see also *Jones v. United States*, 463 U.S. 354, 363, 103 S.Ct. 3043, 3049, 77 L.Ed.2d 694 (1983) ("A verdict of not guilty by reason of insanity establishes two facts: (i) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness.").

22-K-41

was a mental state caused at the time of the murder by illegal drug use, the defendant continued to commit numerous "controlled" and "calculated" acts of violence on both patients and staff, including acts of sexual nature. In some instances, the defendant's attacks resulted in severe bodily injury to his victims. Of more immediate concern is the apparent consensus among the mental health experts on record that the defendant is, and will continue to be, a danger to others in the community upon his release.[2]

In subsection (b) of the official 1966 revision comment to La. C.Cr.P. art. 657, it states:

> . . ."It seems preferable to make dangerousness the criterion for continued custody, rather than to provide that the committed person may be discharged or released when restored to sanity as defined by the mental hygiene laws. Although his mental disease may have greatly improved, such a person may still be dangerous because of factors in his personality and background other than mental disease. Also, such a standard provides a possible means for the control of the occasional defendant who may be quite dangerous but who successfully feigned mental disease to gain an acquittal."

In deciding *Foucha*, our Louisiana Supreme Court implicitly acknowledged the legislature's intent and set forth valid considerations for the continued detention of individuals who were still deemed to be dangerous after being "cured" of the mental illness that absolved them of liability for their criminal acts. Specifically, the court found that the State has a "substantial interest in avoiding premature release of insanity acquittees," which justifies placing the burden on insanity acquittees to show that they no longer present a danger. *State v. Foucha,* 563 So.2d 1138, 1142, *citing Powell v. Florida*, 579 F.2d 324, 333 (5th Cir.1978). To

---

[2] In my opinion, the record supports a finding that the defendant is "dangerous to others" as defined in La R.S. 28:2(6):

(6) "Dangerous to others" means the condition of a person whose behavior or significant threats support a reasonable expectation that there is a substantial risk that he will inflict physical harm upon another person in the near future.

that end, the court concluded that the dangerousness test of La. C.Cr.P. arts. 654-657 was constitutional.[3]

*Foucha* was decided nearly 30-years ago and overturned by a U.S. Supreme Court whose composition is different today, yet the concerns raised in Justice Thomas' dissenting opinion are still very much relevant. As noted by Justice Thomas:

> …I believe that there is a real and legitimate distinction between insanity acquittees and civil committees that justifies procedural disparities. Unlike civil committees, who have not been found to have harmed society, insanity acquittees have been found in a judicial proceeding to have committed a criminal act.
>
> That distinction provided the *ratio decidendi* for our most relevant precedent, *Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983).
> . . .
> The Court today attempts to circumvent *Jones* by declaring that a State's interest in treating insanity acquittees differently from civil committees evaporates the instant an acquittee "becomes sane." I do not agree. As an initial matter, I believe that it is unwise, given our present understanding of the human mind, to suggest that a determination that a person has "regained sanity" is precise.
> . . .
>
> A State may reasonably decide that the integrity of an insanity-acquittal scheme requires the continued commitment of insanity acquittees who remain dangerous. Surely, the citizenry would not long tolerate the insanity defense if a serial killer who convinces a jury that he is not guilty by reason of insanity is returned to the streets immediately after trial by convincing a different factfinder that he is not in fact insane.

*Foucha v. Louisiana*, 504 U.S. 71, 103-123.

In the instant case, I find that the strict application of La. C.Cr.P. art. 657's requirement for an ongoing psychiatric diagnosis, in the absence of which the defendant is presumed "sane," results in a troubling circumstance where the underlying policy consideration of keeping our community safe from violent

---

[3] Of note, Louisiana law still requires consideration of whether a defendant poses a danger to himself and others prior to discharge or release, in addition to the requirement that he or she "no longer has a mental illness."

offenders is seemingly set aside. While I am convinced that we reach the proper result under the law as it currently stands, I join with the trial court in the hope that this particular issue is revisited by our legislature soon to produce more robust guidelines that account for circumstances such as the one raised in this writ application.

**JJM**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY <u>05/25/2022</u> TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-K-41**

### E-NOTIFIED

24th Judicial District Court (Clerk)
Hon. Scott U. Schlegel (DISTRICT JUDGE)
Zachary Orjuela (Respondent)

Thomas J. Butler (Relator)
Darren A. Allemand (Relator)

### MAILED

Marquita D. Naquin (Respondent)
Attorney at Law
848 Second Street
Third Floor
Gretna, LA 70053

Honorable Paul D. Connick, Jr. (Relator)
District Attorney
Twenty-Fourth Judicial District
200 Derbigny Street
Gretna, LA 70053